UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Potier | Civil Action No. 6:16-cv-00144 |
| Versus | Judge Donald E. Walter |
| U.S. Commissioner, Social Security Administration | Magistrate Judge Carol B. Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Linda Marie Potier, fully exhausted her administrative remedies prior to filing this action in federal court. The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on December 26, 2011.[1] Her applications were denied.[2] The claimant requested a hearing,[3] which was held on July

---

[1]  Rec. Doc. 7- 1 at 61.

[2]  Id.  at 25.

[3]  Id.

12, 2014 before Administrative Law Judge Robert Grant.[4]  The ALJ issued a decision on September 15, 2014,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from  December 26, 2011 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on December 2, 2015 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on March 12, 1961.[7]  At the time of the ALJ's decision, she was 52 years old, an individual closely approaching advanced age under the Act, 20 C.F.R. § 404.1563.  She has at least a high school education as she received a General Equivalency Diploma (GED).[8]  She has past relevant work experience as a pick-up truck (hot shot) driver hauling heavy equipment.[9]  She alleges that she has

---

[4]  The hearing transcript is found at Rec. Doc. 7-1 at 39.

[5]  Id. at 22.

[6]  Id.  at 5.

[7]  Id.  at 60.

[8]  Id.  at 68.

[9]  Id.  at 67-68.

been disabled since December 2010[10] due to problems from cervical/lumbar degenerative disc disease, diabetes and neuropathy of the upper extremities.[11]

Ms. Potier was treated at Lafayette General Medical Center on December 29, 2011, for acute cervical and lumbar strains following a motor vehicle accident. The claimant stated that while she was stopped to make a turn, a vehicle rear-ended her causing her 400 pound cargo crate to hit the back of her cab. *T. 45.* X-ray of the lumbar spine was normal. Cervical x-rays revealed "prominent disc space narrowing at C4-C5 and C5-C6 with anterior spurring;" the impression was cervical spondylosis. She was treated for an acute cervical and lumbar strain . *T. 201-205.*

The claimant sought treatment with Dr. Barczyk, chiropractor, for her pain complaints.  He performed a course of physical therapy from January 2012 through November 2013. *T. 239-278, 328-354.* Also, from July 2, 2012 through August 2, 2012 the claimant attended physical therapy at St. Martinville Physical Therapy pursuant to an order from her treating physician. At that time she was assessed with persistent neck and low back pain, with increased flexibility as well as cervical and lumbar range of motion. *T. 388-413.*

---

[10]     Id.  at 28.

[11]     Id.

University Medical Center provided routine treatment for medication refills (blood pressure and diabetes) from April 5, 2012 to December 7, 2012. On occasion in April 2012, claimant complained of blurred vision.  Laboratory workup confirmed new onset of diabetes mellitus as well as treatment for anemia. *T. 207-214*.

On April 26, 2012, Dr. Gregory Gidman evaluated the claimant at the request of her Workers Compensation insurance carrier, Coventry Health Care (CC: Joseph Couch/Coventry). *T. 429.* Claimant complained of neck and lower back pain. She was not complaining of upper or lower extremity pain, numbness or weakness. Her neck pain was severe upon turning to the right and her lower back was mild except when working and it becomes severe. She was taking no medications for her neck and back, only for hypertension and diabetes.  Physical examination revealed tenderness to the cervical/trapezius muscles. There were no spasms. Sensory examination was normal. She had full, pain free range of motion of the shoulders, elbows, wrists and fingers. Her toe/heel gait was normal. There was mild limitation on lateral bending but none with hyperextension. She had tenderness to light palpation of the lumbar area. X-rays revealed chronic degenerative changes at C4-5 and C5-6 with normal lumbar spine. He recommended home therapy program as the chiropractic therapy did not help. Dr. Gidman opined that surgical intervention was not required and the claimant could

-4-

return to very light duty work—she could drive but not bind the loads. He believed she would reach maximum medical improvement in two months. *T. 426-429.*

Ms. Potier sought treatment for continuing neck pain with orthopedic surgeon John Sledge, M.D. on May 30, 2012. *T. 216.* At the time Dr. Sledge examined her, the claimant was working at light duty. Review of the claimant's May 12, 2012 cervical x-rays stated; "[i]n synopsis it shows C4-C5 and C5-C6 degenerative disc disease with anterior spurring, posterior disc osteophyte complex causing lateral recess neural compression." *T.217.* Lumbar x-rays revealed "lower lumbar degenerative changes with posterior facet arthrosis at L3-L4, L4-L5, and L5-S1." *T. 218.* Dr. Sledge recommended continued chiropractic treatment with the next step being steroid injections. He stated that the claimant could continue working on light duty status. *Id.*

A May 12, 2012 MRI of the cervical spine revealed C4-5, C5-6 "diffuse bulges"—"C4-5 diffuse bulge mildly flattening ventral cervical cord with mild to moderate canal stenosis and moderate bilateral foraminal stenosis; the C5-6 diffuse bulge abutting the ventral cervical cord with moderate to severe canal and moderate to severe right with fairly severe left foraminal stenosis." *T. 289-290.* Upon further examination, Ms. Potier complained of neck pain on the right side, stating that driving is painful for her neck. Range of motion of the spine, motor and sensory examination and reflexes of the upper extremities were normal. "Windmilling caused

-5-

pain in the right mid cervical facets and rotation caused pain." *T. 283.* On exam of the low back, she had right flank pain. Lumbar posture and range of motion were normal. *T. 283.* Dr. Sledge diagnosed degenerative changes in the cervical spine at C4-5 and C5-6 levels. He recommended injections and continued chiropractic care.  Treatment was provided for post-traumatic cervical and lumbar pain and degenerative disc disease. He stated claimant was able to continue working light duty. *T. 284.*

Following the claimant's examination by Dr. Sledge on July 16, 2012, he changed his opinion as to the claimant's abilities. Dr. Sledge opined, "The patient is unable to work pending treatment. The patient may return to work with the following restrictions: no lifting or carry more than 10 pounds, no pushing or pulling more than 25 pounds. No repetitive lifting, bending or twisting. The patient must be able to sit or stand at will and most be able to lie down if the need arises." *T. 220.*

On August 6, 2012, Dr. Sledge further opined: "She is not employable at this time, due to the following restrictions: The patient cannot lift or carry more than ten pounds, may not push or pull more than 25 pounds. No repetitive lifting, bending or twisting. Must be able to sit or stand at will and must be allowed to lie down if the need arises. No overhead activity. Driving is restricted to 15 miles at a stretch." *T. 281.*

The claimant was again evaluated by Dr. Gidman on August 16, 2012 with continued complaints of neck pain, lower back pain and left arm numbness. Dr. Gidman acknowledged the claimant's examination by Dr. John Sledge and an MRI of her cervical spine which revealed bulging at C2-3 and C3-4, C4-5 and C5-6 levels, spondylosis at C4-5 and C5-6 and diffuse bulging at the C6-7 and C7-T1 levels. Continuing to disagree with the surgical recommendation, he agreed with Dr. Sledge's order of epidural steroid injections of the cervical spine but considered her prognosis "poor for a good response." Dr. Gidman opined the claimant should be able to do light to light/medium work avoiding heavy lifting. Her neck restrictions were to avoid overhead activity and repetitive head motion or prolonged fixed position. For the lumbar spine she should avoid prolonged maintenance of forward stooped position and repetitive bending or prolonged fixed position. She should avoid activities that require sudden maximum effort or exposure to continuous vibratory motion. Dr. Gidman recommended analgesics and non-steroidal anti-inflammatory medication. *T. 417-424.* In a September 24, 2012 Addendum to his opinion, He opined that the claimant could return to work driving a truck and binding her loads. *T. 415.*

Dr. Sledge administered two rounds of cervical facet injections on July 17, 2012 and October 16, 2013 that provided minimal relief. *T.221-222, 226-227*. On October 31, 2012, Dr. Sledge recommended surgical fusion treatment at C4-C5 and C5-C6. *T.228-229.* At that time, Dr. Sledge opined that Ms. Potier was unable to work pending surgical treatment. *T.230*. At a follow-up appointment on January 30, 2013, Ms. Potier reported that even her apron or her coat causes pain when it touches the back of her neck. *T.231*.

On November 18, 2013, Dr. Sledge's examination revealed a protracted kyphotic posture [convex curvature], paresthesia [tingling or prickling sensation] in the right radial 3 ½ and left radial 3 ½ digits, restricted range of motion of the cervical spine, and tenderness to palpation of multiple muscle groups surrounding the cervical spine. *T.481-483*. Dr. Sledge noted the claimant had symptoms suggesting bilateral carpal tunnel syndrome and was awaiting cervical fusion surgery at C4–5 and C5–6 for herniated nucleus pulpous. *T.483*.

On December 18, 2013, a non-examining State agency review physician, Sheryl Smith, M.D., opined as to Ms. Potier's residual functional capacity based on the medical evidence available at the time. *T.60-63*. Dr. Smith opined that Ms. Potier could carry up to 20 pounds, sit and stand for 6 hours per day, and had postural limitations as well as limitations in working overhead bilaterally. *T.60-63*.

On February 19, 2014, the claimant continued to complain of neck and back pain as well as hand numbness. Dr. Sledge's examination revealed paresthesia in the right radial 3 ½ and left radial 3 ½ digits as well as in the right C5, left C5, right C6, and left C6; increased pain in the right C5, left C5, right C6 and left C6; decreased strength in the right deltoid, left deltoid, right bicep, left bicep, right tricep, left tricep, right wrist extensors, left wrist extensors, right wrist flexors, left wrist flexors, right intrinsics, and left intrinsics (all 4/5); restricted range of motion of the cervical spine in all planes; tenderness to palpation of multiple muscle groups surrounding the cervical spine; localized swelling; muscle spasms; and a positive foraminal compression and Spurling's test. *T.478-480.* Dr. Sledge assessed Ms. Potier with bilateral upper extremity radicular symptoms based on his clinical examination. *T.480.* On May 19, 2014, Dr. Sledge's examination revealed clinical findings substantially similar to those of February 19, 2014. *T.475-477.* The records indicate that ongoing conservative treatment for cervical radiculitis continues pending approval for surgery.

Southwest Central for Health Services provided treatment from January 9, 2014 to May 29, 2014 for management of diabetes and hypertension. The claimant denied polyuria or polyphagia, but did have complaints of increased fatigue and thirst. Recommendations were to watch her diet, increase exercise level and monitor her glucose levels. She was prescribed Glipizide, Lisinopril and Metformin. She had

not purchased a home glucose meter.  Her blood pressure was 148/80. She reported

being out of medication for five days. *T. 447-472*.

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited

to determining whether substantial evidence supports the decision and whether the

proper legal standards were used in evaluating the evidence.[12]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."[13]  Substantial evidence "must do more than create a suspicion of the

existence of the fact to be established, but 'no substantial evidence' will only be

found when there is a 'conspicuous absence of credible choices' or 'no contrary

medical evidence.'"[14]

---

[12]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

## B.   **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they

---

[15]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[16]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17]     *Martinez v. Chater*, 64 F.3d at 174.

[18]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

are both insured and disabled, regardless of indigence.[19]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

---

[19]     See 42 U.S.C. § 423(a).

[20]     42 U.S.C. § 1382(a)(1) & (2).

[21]     42 U.S.C. § 1382c(a)(3)(A).

[22]     42 U.S.C. § 1382c(a)(3)(B).

## C.   Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[26]  The claimant's residual functional capacity is used at the fourth

---

[23]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[25]     20 C.F.R. § 404.1520(a)(4).

[26]     20 C.F.R. § 404.1545(a)(1).

step to determine if he can still do her past relevant work and at the fifth step to determine whether she can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

---

[27]      20 C.F.R. § 404.1520(e).

[28]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

### D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since December 26, 2011.[33]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: cervical and lumbar degenerative disc disease, diabetes and neuropathy of the left upper extremity.[34]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[35]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the light level except for lifting 20 pounds occasionally, 10 pounds frequently, standing and walking 6 hours of an 8-hour day, sitting for 6 hours of an 8-hour workday and only frequent use of the left upper extremities.[36]

---

[33]    Rec. Doc. 7.1 at 27.

[34]    Id.

[35]    Id.

[36]    Id. at  27-28.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work.[37]

At step five, the ALJ found that the claimant was not disabled from December 26, 2011 through September 15, 2014 (the date of the decision) because there are jobs in the national economy that she can perform.[38]   The claimant challenges this finding.

**E.    THE ALLEGATIONS OF ERROR**

The claimant argues that the ALJ erred (1) because she improperly evaluated the medical evidence; and (2) because she improperly evaluated the claimant's residual functional capacity.

**F.    THE ALJ'S EVALUATION OF THE MEDICAL EVIDENCE AND EVALUATION OF THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY**

Ms. Potier  claims that the ALJ erred in failing to properly weigh the medical evidence in the record of her treating physician, Dr. Sledge, and of the examining physician, Dr. Gidman, and therefore erred in evaluating the claimant's residual functional capacity. She also argues that the ALJ's assessment restricts her to frequent use of her left arm but fails to provide any rational as to why the

---

[37]    Id. at 31.

[38]    Id.  at 32.

restriction is not bilateral when she has bilateral cervical radiculopathy and decreased muscle strength of her bilateral upper extremities.

The ALJ has sole responsibility for determining the claimant's disability status.[39]  Although a physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[40] In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[41]  As the Fifth Circuit stated, "[t]he expert opinion[ ] of a treating physician as to the existence of a disability [is] binding on the fact-finder unless contradicted by substantial evidence to the contrary."[42]

---

[39]     *Newton v. Apfel*, 209 F.3d at 455.

[40]     *Pineda v. Astrue*, 289 Fed. App'x 710, 712-13 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[41]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[42]     *Loza v. Apfel*, 219 F.3d at 393 (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2nd Cir. 1978)).

The Social Security regulations and rulings explain how medical opinions are to be weighed.[43]  Generally, the ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record.  Furthermore, a treating doctor's opinion that is well-supported by medical evidence is entitled to controlling weight.[44] If an ALJ declines to give controlling weight to a treating source opinion, the opinion is "still entitled to deference . . . [i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."[45] Moreover, before assigning no weight to a treating source opinion, the opinion "must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927."[46]

In this case the ALJ gave "little weight" to the opinions of the claimant's treating orthopedic surgeon, Dr. Sledge, asserting the "opinion is not consistent

---

[43]     20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.

[44]     20 C.F.R. § 404.1527(c)(1).

[45]     SSR 96-2p, *4; *See also Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[T]he expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder unless contradicted by substantial evidence to the contrary."); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.").

[46]     SSR 96-2p, *4; *See also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)("An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization.").

with the overall evidence as the record indicates ongoing improvement." The claimant argues that, contrary to this statement, the medical records provide that during his 2013-2014 examinations of the claimant, Dr. Sledge found clinical signs of increasing radicular problems. *T. 475-483.*

As provided by the medical records, Dr. Sledge initially examined the claimant on May 30, 2012. *T. 218.* At that time he opined that she could continue to work at light duty. In her next examination on July 16, 2012 Dr. Sledge placed significant functional limitations on the claimant, *T. 220,* and then added additional limitations after the August 6, 2012 examination. *T. 224.* On October 31,2012, Dr. Sledge opined that the claimant was unable to work pending surgical treatment. *T.230.* Dr. Sledge's physical examinations noted increased clinical signs of cervical radiculopathy, including paresthesia, decreased muscle strength, swelling, spasms and a positive foraminal compression/Spurlin's test. *T. 475-483.* Thus, based on the foregoing, as well as the fact that Dr. Sledge has not released the claimant to return to work in any capacity since July 2012, the ALJ's reasoning in giving Dr. Sledge "little weight" based on the claimant's "ongoing improvements" is not supported by substantial evidence.

The ALJ assigned "great weight" to the opinions of Dr. Gidman finding his opinions "consistent with the objective evidence of record." *T.26.* After assigning

this great weight to Dr. Gidman's ultimate opinion that the claimant can return to work as a truck driver, *T.26*, the ALJ found at step four that she was unable to return to work as a driver, *T.27*. This inconsistency is not explained in the decision.[47] Also, despite this great weight, the ALJ did not include numerous other functional limitations in the claimant's residual functional capacity assessment that Dr. Gidman opined were needed due to her lumbar and cervical impairments—i.e. avoiding heavy lifting, overhead activity and repetitive head motion or prolonged fixed position, prolonged stooped position or fixed position, repetitive bending and exposure to continuous vibratory motion. Dr. Gidman performed two evaluations of the claimant's medical condition on behalf of the worker's compensation insurer. The record indicates that the insurer did not settle Ms. Potier's medical claim.

The responsibility for determining a claimant's residual functional capacity belongs to the ALJ.[48] In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other

---

[47]*See Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996) ("The two findings are irreconcilable, requiring a remand to the agency for new findings"); *Adorno v. Shalala, 40 F.3d 43, 44* (3d Cir. 1994) ("Because the findings of fact on which the [ALJ] based [his or her] decision are logically inconsistent and contradictory, we will . . . remand for further proceedings consistent with this opinion").

[48]    *Ripley v. Chater*, 67 F.3d at 557.

information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[49]

Here, while the ALJ acknowledged Dr. Sledge's limitations placed on the claimant on July 16, 2012, she discounted Dr. Sledge's opinions to "little weight" on the basis that they are "not consistent with overall evidence of record as the records indicate ongoing improvement."[50]   Although the ALJ found that Dr. Gidman's opinion should be given "great weight," she only considered his August 16, 2012 opinion that the claimant could do "light to light/medium work avoiding heavy lifting" and ignored his September 24, 2012 Addendum opinion that the claimant could "return to work driving a truck and binding her loads."

While the ALJ established that the claimant has "medically determinable impairments that limit activities," she downplayed the claimant's pain and limitation secondary to neck and back impairments," and she opined that the claimant's diagnostic studies "failed to show nerve root impingement."

An ALJ "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments.[51]   In this case, however, the

---

[49]       *Martinez v. Chater*, 64 F.3d at 176.

[50]       Rec. Doc. 7-1 at 26-27.

[51]       *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

ALJ concluded, on her own, that the claimant's limited daily activities outweigh the medical evidence concerning the existence of diagnostic testing—i.e."C4-5 diffuse bulge mildly flattening ventral cervical cord" and "C5-6 diffuse bulge abutting the ventral cervical cord with moderate to severe canal and moderate to severe right with fairly severe left foraminal stenosis." *T. 289-290.* She also concluded, on her own, that the claimant impairments are "stable and manageable without need for significant medical intervention or pain medication," even though Dr. Gidman agreed with Dr. Sledge that she should have epidural steroid injections of the cervical spine.  Finally, she concluded, on her own and against all medical advise, that the claimant be restricted only to "frequent use of her left upper extremities[sic]" versus both arms. Dr. Gidman and Dr. Scott, both given "great weight" by the ALJ, opined that the claimant would have bilateral overhead reaching limitations. Dr. Gidman stated that she "avoid overhead activity" and Dr. Scott opined that she should have "bilateral overhead reaching limitations."

"Although the ALJ may weigh competing medical opinions about. . . limitations and use objective medical evidence to support its determination that one opinion is better founded than another, neither the ALJ nor the court is free

to substitute its own opinion."[52]  Thus, the ALJ erred when she substituted her own opinion for that of the claimant's physicians.

The ALJ also erred when she gave Dr. Sledge's opinions only "little" or "partial" weight.  Dr. Sledge is a specialist in the field of ortthopedics, and he is the claimant's treating physician.  As such, his opinions are entitled to deference.  The medical opinions in the record confirm his diagnosis of cervical disc degeneration C4-C5 and C5-C6.  Furthermore, as noted above, Dr. Sledge's evaluation is based on the objective evidence he gathered in his multiple examinations of the claimant over a two year period and set forth in his treatment notes.  Accordingly, the ALJ's proffered reasons for assigning "little"  weight to Dr. Sledge's treating source medical opinions is not supported by substantial evidence in the record.  For those reasons, this matter will be remanded for a proper weighing of medical opinions and a reevaluation of the claimant's application for benefits.

The ALJ's residual functional capacity restricts the claimant to "frequent use of her left upper extremities." The claimant's medical records indicate that her problems are caused by *bilateral* muscle weakness caused by *bilateral* cervical radiculopathy. *T. 475-483*. The ALJ gave the opinion of the non-examining State

---

[52]     *Fabre v. Astrue*, No. 13-00076-BAJ-RLB, 2014 WL 4386424, at *6, n. 6 (M.D. La. Sept. 4, 2014).

agency physician, Dr. Scott, "great weight", *T. 27*, but then, without reasons, disregarded her opinion as to the claimant's *bilateral* manipulative limitations—"Reaching any direction (including overhead): Limited, Left Overhead, Right Overhead." *T. 62*. Likewise, after giving the opinion of Dr. Gidman, retained by the insurance company, "great weight," the ALJ disregarded his limitation recommendations which included "her neck restrictions would be to overhead activities...." *T. 424*. Accordingly, this Court finds that the ALJ's residual functional capacity finding is flawed and should be reevaluated on remand.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the ALJ's finding regarding the claimant's residual functional capacity and the ALJ's finding that the claimant is not disabled were reached by applying an inappropriate legal standard and are not based on substantial evidence in the record.  Accordingly, it is recommended that this matter be reversed and remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings with instructions to properly weigh Dr. Sullivan's opinions, to reevaluate the claimant's residual functional capacity, and to reevaluate whether there are jobs in the economy that the claimant can perform.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 23rd day of February 2017.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**